15 MAG  2032

Approved: _____
DREW JOHNSON-SKINNER
Assistant United States Attorney

Before:   HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York

ORIGINAL

U.S. DISTRICT COURT FILED
JUN 1 2 2015
S. D. OF N.Y.

------------------------------- x

UNITED STATES OF AMERICA          :   COMPLAINT   DOC # 1

                                      Violations of
      - v. -                      :   21 U.S.C. §§ 841(a)(1), 846
                                      18 U.S.C. § 2
ALEXANDER UNGER,                  :
                                      COUNTY OF OFFENSE:
              Defendant.          :   NEW YORK

------------------------------- x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        RICHARD DEMURJIAN, being duly sworn, deposes and says
that he is a Special Agent with the Drug Enforcement
Administration ("DEA"), and charges as follows:

                          COUNT ONE
                    (Narcotics Conspiracy)

        1.   From at least in or about April 2015 up to and
including in or about June 11, 2015, in the Southern District of
New York and elsewhere, ALEXANDER UNGER, the defendant, and
others known and unknown, intentionally and knowingly did
combine, conspire, confederate, and agree together and with each
other to violate the narcotics laws of the United States.

        2.   It was a part and an object of the conspiracy
that ALEXANDER UNGER, the defendant, and others known and
unknown, would and did distribute and possess with intent to
distribute controlled substances in violation of 21 U.S.C. §
841(a)(1).

3.   The controlled substances that ALEXANDER UNGER, the defendant, conspired to distribute and possess with intent to distribute were: (1) one gram and more of mixtures and substances containing a detectable amount of lysergic acid diethylamide ("LSD"), in violation of Title 21, United States Code, Section 841(b)(1)(B); and (2) a quantity of 3,4-methylenedioxymethamphetamine ("MDMA"), commonly known as ecstasy, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

COUNT TWO
(Narcotics Possession with Intent to Distribute)

4.   On or about April 28, 2015, in the Southern District of New York, ALEXANDER UNGER, the defendant, intentionally and knowingly distributed and possessed with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

5.   The controlled substance involved in the offense was a quantity of mixtures and substances containing a detectable amount of lysergic acid diethylamide ("LSD"), in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code,
Sections 812, 841(a)(1); 841(b)(1)(C);
and Title 18, United States Code, Section 2.)

COUNT THREE
(Narcotics Possession with Intent to Distribute)

6.   On or about May 13, 2015, in the Southern District of New York, ALEXANDER UNGER, the defendant, intentionally and knowingly distributed and possessed with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

7.   The controlled substance involved in the offense was a quantity of 3,4-methylenedioxymethamphetamine ("MDMA"), commonly known as ecstasy, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code,
Sections 812, 841(a)(1); and 841(b)(1)(C);
and Title 18, United States Code, Section 2.)

COUNT FOUR
(Narcotics Possession with Intent to Distribute)

8.  On or about May 19, 2015, in the Southern District of New York, ALEXANDER UNGER, the defendant, intentionally and knowingly distributed and possessed with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

9.  The controlled substance involved in the offense was one gram and more of mixtures and substances containing a detectable amount of lysergic acid diethylamide ("LSD"), in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code,
Sections 812, 841(a)(1); and 841(b)(1)(B);
and Title 18, United States Code, Section 2.)

COUNT FIVE
(Narcotics Possession with Intent to Distribute)

10.  On or about June 10, 2015, in the Southern District of New York, ALEXANDER UNGER, the defendant, intentionally and knowingly distributed and possessed with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

11.  The controlled substance involved in the offense was one gram and more of mixtures and substances containing a detectable amount of lysergic acid diethylamide ("LSD"), in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code,
Sections 812, 841(a)(1); and 841(b)(1)(B);
and Title 18, United States Code, Section 2.)

COUNT SIX
(Narcotics Possession with Intent to Distribute)

12.  On or about June 11, 2015, in the Southern District of New York, ALEXANDER UNGER, the defendant, intentionally and knowingly distributed and possessed with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

13.  The controlled substances involved in the offense were: (1) one gram and more of mixtures and substances

3

containing a detectable amount of lysergic acid diethylamide ("LSD"), in violation of Title 21, United States Code, Section 841(b)(1)(B); and (2) a quantity of 3,4-methylenedioxymethamphetamine ("MDMA"), commonly known as ecstasy, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1); 841(b)(1)(B); and 841(b)(1)(C); and Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

14. I am a Special Agent with the DEA. I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with law enforcement agents, witnesses and others, as well as my examination of documents, reports, records, and recordings. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

15. Based on my personal involvement in this investigation, my conversations with other law enforcement officers, the CI, and others, and my review of documents, reports, and recordings, I have learned, among other things, the following:

a. In or about April 2015, a confidential informant ("CI")[1] advised DEA agents that the CI knew a person by the name of "Alexander Unger" who sold LSD, a Schedule I controlled substance.

b. In or about April 2015, at the direction of law enforcement, the CI contacted ALEXANDER UNGER, the

---

[1] The CI is a paid informant who has been working with the DEA since in or about April 2015. The CI had been involved in the trafficking of marijuana and related substances prior to becoming a paid informant. Information provided by the CI as part of this investigation and other investigations has proven reliable, and has been corroborated by other independent evidence, including the seizure of controlled substances and surveillance by law enforcement.

4

defendant, by text message to a certain phone number, which number the CI knew to be associated with UNGER, to arrange the purchase of LSD. Through subsequent text messages, UNGER and the CI agreed on a certain price at which UNGER would sell the CI a certain number of doses of LSD.

      16. Based on my personal involvement in this investigation, my conversations with other law enforcement officers, the CI, and others, and my review of documents, reports, and recordings, I have learned, among other things, the following:

      a. On or about April 28, 2015, at the direction of law enforcement, the CI went to a building located on East 10th Street, New York, New York, which the CI knew to contain an apartment in which ALEXANDER UNGER, the defendant, resided (the "Building"). Before the CI entered the Building, the CI was searched by DEA agents and outfitted with a recording device. DEA agents conducted surveillance of the Building and observed the CI enter and exit the Building.

      b. The CI and UNGER met in the lobby of the Building and proceeded to UNGER's apartment (the "Apartment").

      c. Inside the Apartment, the CI and UNGER discussed UNGER's LSD source of supply, how long UNGER has known the LSD supplier, and UNGER's previous LSD orders from the supplier. The CI and UNGER also discussed how the LSD is shipped and obtained by UNGER.

      d. The CI asked, in sum and substance, whether UNGER had any LSD available at the moment as a sample. UNGER produced a small piece of paper, which he wrapped in tinfoil and provided to the CI. UNGER said, in sum and substance, that it was approximately four doses.

      e. The CI gave UNGER $450 in U.S. currency for the LSD order that was previously discussed between CI and UNGER. UNGER said, in sum and substance, that the CI's LSD order would be available in approximately 10 days.

      f. The CI exited the Building and was met by DEA agents. The CI provided the paper wrapped in tinfoil to DEA agents.

      g. DEA agents sent the paper to a DEA laboratory, and it tested positive for the presence of LSD.

17. Based on my personal involvement in this investigation, my conversations with other law enforcement officers, the CI, and others, I have learned, among other things, the following:

    a. The CI confirmed to DEA agents that the person the CI met with in the Apartment was the person known to the CI as "Alexander Unger." Additionally, the CI identified the person depicted in a photograph associated with a driver's license in the name of "Alexander Unger" as ALEXANDER UNGER, the defendant.

18. Based on my personal involvement in this investigation, my conversations with other law enforcement officers, the CI, and others, and my review of documents, reports, and recordings, I have learned, among other things, the following:

    a. On or about May 3, and May 5, 2015, at the direction of law enforcement, the CI exchanged text messages with ALEXANDER UNGER, the defendant, regarding when the package would be available. UNGER stated, in sum and substance, that the package would be here on or about May 7, or May 8, 2015, and that the CI could pick up the LSD from UNGER then.

    b. In subsequent text message and voice conversations with UNGER in or about May 2015, the CI learned from UNGER that the LSD in the expected package had been damaged. The CI and UNGER engaged in additional conversations regarding the CI obtaining "Molly" or MDMA from UNGER.

19. Based on my personal involvement in this investigation, my conversations with other law enforcement officers, the CI, and others, and my review of documents, reports, and recordings, I have learned, among other things, the following:

    a. On or about May 13, 2015, at the direction of law enforcement, the CI went to the Building. Before the CI entered the Building, the CI was searched by DEA agents and outfitted with a recording device. DEA agents conducted surveillance of the Building and observed the CI enter and exit the Building.

    b. The CI and ALEXANDER UNGER, the defendant, met in the lobby of the Building and proceeded to the Apartment.

     c. At the door of the Apartment, the CI or UNGER knocked on the door. A female opened the door and UNGER and the CI walked into the Apartment.

     d. UNGER stated to the CI, in sum and substance, that he had just come from his source of supply for "Molly" or MDMA. UNGER removed a clear plastic bag from his pocket containing a crystalline substance that was brownish-yellow in appearance. UNGER weighed the bag on a scale. UNGER provided the CI with the bag containing the brownish-yellow crystalline substance. UNGER stated to the CI, in sum and substance, that the substance was MDMA, not another chemical substance.

     e. The CI exited the Building and was met by DEA agents. The CI provided DEA agents with the bag containing the brownish-yellow crystalline substance.

     f. The substance contained in the bag field-tested positive for the presence of MDMA. The substance has been sent to a DEA laboratory for testing, but the results of the test are not yet available.

  20. Based on my personal involvement in this investigation, my conversations with other law enforcement officers, the CI, and others, and my review of documents, reports, and recordings, I have learned, among other things, the following:

     a. On or about May 19, 2015, at the direction of law enforcement, the CI went to the Building. Before the CI entered the Building, the CI was searched by DEA agents and outfitted with a recording device. DEA agents conducted surveillance of the Building and observed the CI enter and exit the Building.

     b. The CI entered the Building and proceeded to the Apartment, where the CI met ALEXANDER UNGER, the defendant.

     c. UNGER stated to the CI, in sum and substance, that he had recently traveled to Denver, Colorado, and had acquired LSD in liquid form.

     d. The CI provided UNGER with $550 in U.S. currency. UNGER then retrieved from the vegetable drawer of a refrigerator in the Apartment a small, brown, dropper-bottle containing a clear liquid ("Bottle-1"). UNGER provided Bottle-1 to the CI.

    e. The CI exited the Building and was met by DEA agents. The CI provided DEA agents with Bottle-1.

    f. DEA agents sent Bottle-1 to a DEA laboratory, and the substance in Bottle-1 tested positive for LSD. The laboratory reported that the weight of the liquid was approximately two grams.

  21. Based on my personal involvement in this investigation, my conversations with other law enforcement officers, the CI, and others, and my review of documents, reports, and recordings, I have learned, among other things, the following:

    a. On or about June 10, 2015, at the direction of law enforcement, the CI went to the Building at the invitation of UNGER. Before the CI entered the Building, the CI was searched by DEA agents and outfitted with a recording device. DEA agents conducted surveillance of the Building and observed the CI enter and exit the Building.

    b. The CI proceeded to the Building, and was let into the Building by the Building's doorman. When the CI arrived at the Apartment door, the door was unlocked, and the CI entered and found ALEXANDER UNGER, the defendant.

    c. The CI and UNGER discussed, in sum and substance, the quality of the LSD obtained by UNGER. The CI provided UNGER with $550 in U.S. currency and UNGER retrieved a small, brown, dropper-bottle containing a clear liquid ("Bottle-2") from the refrigerator in the Apartment.

    d. The CI exited the Building and was met by DEA agents. The CI provided DEA agents with Bottle-2. Bottle-2 appeared identical to Bottle-1 and appeared to contain the same amount of liquid as Bottle-1. Based on my training and experience, and the fact that Bottle-1 tested positive for LSD, I believe Bottle-2 contains LSD.

    e. The substance contained in Bottle-2 is in the process of being submitted to a DEA laboratory for testing, but the results of the test are not yet available.

  22. Based on my personal involvement in this investigation, my conversations with other law enforcement officers and others, and my review of documents, reports, and recordings, I have learned, among other things, the following:

a. On or about June 11, 2015, DEA agents obtained a judicially-authorized search warrant for the Apartment.

b. Upon executing the search warrant on or about June 11, 2015, DEA agents, including myself, found ALEXANDER UNGER, the defendant, alone in the Apartment.

c. Additionally, DEA agents found, in the refrigerator in the Apartment, a small, brown, dropper-bottle containing a clear liquid ("Bottle-3"), which appeared identical to Bottle-1 and Bottle-2 and appeared to contain the same amount of liquid as Bottle-1 and Bottle-2. Based on my training and experience, and the fact that Bottle-1 tested positive for LSD, I believe Bottle-3 contains LSD.

d. DEA agents also found on a table in the living room area of the Apartment, where UNGER was sitting when agents entered the Apartment, two clear plastic bags containing a brownish-yellow crystalline substance that appeared, based on the agents' training and experience, to be "Molly" or MDMA. After being informed of his Miranda rights, UNGER stated to agents, in sum and substance, that the substance in the bags was MDMA.

e. DEA agents also found on the table in the living room area of the Apartment: (1) a plastic bag containing numerous small, clear plastic baggies, which are, based on my training and experience, consistent with and used in retail controlled substance trafficking; and (2) an electronic scale.

f. Additionally, DEA agents found in the Apartment on the kitchen counter and next to the refrigerator: (1) mints laid out on a tinfoil strip; (2) a mint box; and (3) an electronic scale.

g. Additionally, DEA agents found in the refrigerator of the Apartment: (1) folded tinfoil that appears to be consistent, based on my training and experience and my involvement in this investigation, with packaging of paper containing LSD; and (2) tinfoil that appears to contain, based on my training and experience and my involvement in this investigation, one mint believed to contain LSD. Agents have not yet opened these tinfoil packages, which have been submitted to a DEA laboratory for analysis.

f. Upon discovering the above-described controlled substances and items in the Apartment, UNGER was arrested by DEA agents.

9

WHEREFORE, deponent prays that ALEXANDER UNGER, the defendant, be imprisoned or bailed, as the case may be.

_____
RICHARD DEMURJIAN
Special Agent
DEA

Sworn to before me this
12th day of June, 2015

_____
HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

10